# EXHIBIT J

Seth W. Wiener, CSBN No. 203747
LAW OFFICES OF SETH W. WIENER
609 Karina Court
San Ramon, CA 94582
Telephone: (925) 487-5607
Facsimile (925) 828-8648
Email: seth@sethwienerlaw.com

*Attorneys for Plaintiff*
PUSH DATA LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PUSH DATA LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>GUCCI AMERICA, INC., an American company; and GUCCIO GUCCI, S.P.A, an Italian company,<br><br>      Defendant. | Case No.:<br><br>**DECLARATION OF<br>ERIC MORGAN DOWLING IN<br>SUPPORT OF COMPLAINT** |

I, Eric Dowling, declare as follows:

# I.   BACKGROUND INFORMATION

1.    My name is Eric Morgan Dowling.  I reside at Ave 30, Calle 154, Cond. Cartagena Real #4, Escazu, San Jose, Costa Rica.

2.    This declaration is based on my own personal knowledge.

3.    I am one of the named inventors of U.S. Patent Nos. 6,983,139 (the "'139 patent"), 7,058,395 (the "'395 patent"), 7,212,811 (the "'811 patent"), and 7,292,844 (the "'844 patent") collectively, the "patents in suit").

4.    I, Eric Morgan Dowling, along with Duncan Leo MacFarlane and Mark Nicholas Anastasi are the inventors of the patents in suit (collectively, the "Inventors").

5.    I am also one of the named inventors of U.S. Patent No. 6,574,239 (the "'239 patent") incorporated by reference into each of the patents in suit.  The other inventor of the '239 patent is Mark Nicholas Anastasi.

6.    Each of the patents in suit incorporates by reference the specification of then co-pending application 09/167,698, filed October 7, 1998, which issued as the '239 patent.

7.    Each of the patents in suit has the same figures and the same substantive written description, although column and line number citations may differ slightly due to the U.S. Patent and Trademark Office's clerical data.  Hence in this Declaration I will focus on discussing the '395 patent.

8.    On information and belief, Push Data LLC ("Push Data" or "Plaintiff") is the assignee and owner of the right, title and interest in and to the patents in suit, including the right to assert all causes of action arising under said patents and the right to any remedies for their infringement.

9.    I understand Push Data intends to file a Complaint for infringement of the patents in suit against Gucci America, Inc. and Guccio Gucci, S.p.A. (collectively "Gucci" or "Defendants").

1
DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

10.     I make this declaration in support of Push Data's Complaint against Gucci in the above-captioned action.

## II.     QUALIFICATIONS AND EXPERIENCE

11.     I hold three degrees from the University of Florida: (1) a Bachelor of Science degree in Electrical Engineering earned in 1984; and (2) a Master of Science degree in Electrical Engineering earned in 1986; and (3) a Doctor of Philosophy (Ph.D.) in Electrical Engineering earned in 1989.

12.     From 2011–2018, I acted as President of Texas Trellis Phase, LLC, and general partner of Trellis Phase Communications, LP.  As such, I was responsible for leading a research and development company developing next generation physical layer communication technologies for DSL, Cable Modems, WiFi, Bluetooth, Digital CATV Transmission, Terrestrial HDTV Transmission, and Cellular Communications.

13.     Since 1995, I have acted as a Consultant in patent-related projects, providing consulting services related to, for example, patent infringement, noninfringement, and validity analysis, product/standards research, and litigation and cross licensing support.  A partial list of these past clients include: Microsoft, AT&T, Tellular, Telesys, Harris Corp, Hughes, Thompson, GE, Raytheon, Paradyne, Samsung, J2 Communications, LSI Logic, ARC International, Enterprise Partners, Solar Products, EKMS, BTG, VSI, Core Enterprises, Baker and Botts; McKool Smith; Adduci, Manstriani and Schamuberg; Knobbe Martens Olson & Bear; Fulbright and Jarwoski; Merchant and Gould; Weil Gotshal, and Manges; Lerner and Greenberg; Klarquist Sparkman; Workman Nydegger; Gazdzinski and Associates; Kaplan & Gilman; Hamman and Benn; Marshal, Denehey, Warner, Coleman & Goggin; Carstens, Yee & Cahoon, others not disclosed due to NDAs.

14.     From 1989 to 2001, I was employed as a professor at the University of Texas, Dallas.  First, from 1989-1995, I served as an Assistant Professor of

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

Electrical Engineering.  Then, from 1995-2001, I served as an Associated Professor of Electrical Engineering, with tenure.

15.     In addition, from 1985-2001, I acted as a Consultant in electrical engineering projects, focusing on design.  For example, some clients during these years include: DGI Technologies Inc, focusing on DSP Microprocessor based Real Time T1 Network Echo Canceller; Micron Technology Inc., wherein I consulted on the design of processors and embedded DRAM systems; Pinpoint communications Inc., focusing on radio direction finding for RF identification; DTex Inc., focusing on design of algorithms, DSP processing board, and DSP56L811 DSP software to implement an advanced ultra-sensitive metal detector; Raytheon / E-Systems, focusing on design of Digital Signal Processing Software for a Military Mobile Telecommunications Switch; INET Corp., focusing on Design of Equalizers for T-Carrier Wireline Transmission Systems; US Naval Undersea Warfare Center, focusing on Adaptive Sonar Signal Processing Software; Ultimate Technologies Inc., focusing on Research and Design of Active Noise Control Systems; Alcatel Network Systems, focusing on Microprocessor Systems Design - On Site Training; Nortel, focusing on Digital Signal Processing - On Site Training; University of Texas Southwestern Medical Center, focusing on design of algorithms for Biomedical Signal Processing, Electrospace Systems Inc., focusing on design of DSP algorithms for noise cancellation; and Athena Group, Inc., focusing on NSF SBIR Contracting and DSP Software.

## III.   MATERIALS CONSIDERED

16.     I have considered the materials listed in this declaration as well as the '139 patent, the '395 patent, the '811 patent, and the '844 patent, the incorporated-herein-by-reference patent application that issued as the '239 patent, and their prosecution histories, as well as related patents.

17.     I am being compensated at my regular and established rate of $250 per hour.  My compensation is not dependent on the outcome of this proceeding.

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

## IV.   TECHNOLOGICAL PROBLEMS SOLVED BY THE PATENTS

### A.   The Invention

18.    The patents in suit resulted from the pioneering efforts of the Inventors in the areas of wireless Internet services, wireless push notifications, geo-location based services, targeted data dissemination to wireless mobile units, and quickly-resumed wireless communication sessions.

19.    These efforts resulted in the development of geographical web browser, methods, apparatus, and systems.

20.    While the existing technologies provided valuable benefits, no technology existed to provide local broadcast information to automatically control a network application, such as a web browser or other applications, by selectively filtering broadcast information using a packet filter.  Instead, the technology at the time required a user to select an icon or manually navigate to information specific to a local area.

21.    The Inventors set out to cure these deficiencies, providing an overall benefit to a user.  Specifically, the patents in suit were conceived to provide a user with the capability to receive information based on that user's position.

22.    When developing the invention, the Inventors noted that typically, systems relied on the use of "cell data" for positional purposes.  This cell data only provided a coarse idea of a user's position.

23.    As such, the Inventors contemplated the benefits of using, for example, locally pushed wireless packets, e.g., local broadcast domain packets, or GPS location data, providing a much more defined set of data that presents more opportunities for individualized transmissions.  In addition, the Inventors set out to allow the data used in these systems to be updated based on unsolicited pushed information packets which could trigger, for example, downloading of related information from the Internet.

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

24.     The Inventors solved these and other problems by providing systems and methods to enable a mobile unit to maintain a first network connection with a central server and to control information flow on this connection using information received on an auxiliary channel.

25.     For example, such systems and methods include receiving one or more preferences from a user, receiving at least an approximate geographical location of a particular user's mobile device or unit, identifying an information item that aligns with both the users one or more preferences and is associated with the location of the user's device or unit, and causing information related to the identified information item to be wirelessly transmitted, via a push message, to the user's device without the need to maintain an active user-interactive client-server application layer at all times.

26.     Figure 1 of the '395 patent shows an exemplary overview of the invention of the asserted patents.  In this example, mobile unit 105 is connected to both a first network connection 112, e.g., a cellular data network, and a second network connection 113, e.g., a WiFi type network coupled through the Internet. The '395 patent describes that a local broadcast domain entity is, for example, a low power wireless local area network that can be connected to the cellular system or directly to the Internet 113, like a modern-day WiFi access point.

27.     The exemplary mobile unit also includes a GPS receiver in communication with at least one GPS satellite 155.  The '395 patent teaches that the exemplary mobile unit 105 shown in Figure 1 need not be vehicle mounted but can be implemented as a handheld unit.  That is, the architecture of Figure 1 is what has now been ubiquitously adopted in modern wireless systems via smartphone and tablet technologies.

28.     As stated above, each of the patents in suit incorporates by reference then co-pending application 09/167,698, which issued as the '239 patent. Accordingly, certain concepts of the 09/167,698 application are specifically

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

disclosed to be used in combination with the inventions of the '139 patent, the '395 patent, the '811 patent, and the '844 patent.  Many of the claimed inventions in the patents in suit are bolstered by the incorporated-by-reference material.

29.    For instance, certain exemplary disclosures in the patents in suit describe blocks that refer to the incorporated-by-reference disclosure of the '239 patent.  The '239 patent explains that the mobile unit 105 corresponds to the remote unit 100 of Figure 1 and Figure 2 of the '239 patent disclosure.

30.    Embodiments involving virtual sessions with suspend/resume capabilities and push-specific aspects rely on the incorporated-by-reference co-pending patent application that eventually was patented as the '239 patent.  These include an application identifying field, virtual sessions, and certain aspects of the outbound push services.

31.    Certain inventive concepts developed by the Inventors involved technologies that could allow wireless push messages to be sent to one of a plurality of installed application programs ("Apps") loaded into a user's mobile device like a smartphone or a tablet computer.

32.    Push messages would preferably be sent over virtual sessions which had stored session parameters, such as what is now implemented in modern day TLS (Transport Layer Security) sessions right below the application layer.

33.    An application-specific identifier would allow the push message to be routed to a specific corresponding client-side App.  The mobile unit would be constructed with two wireless air interfaces, one to a data service supplied by a cellular communications network, and another to a local broadcast domain entity such as a WiFi access point.  At different times wireless push messages could be received via one or the other of these air interfaces.

34.    Certain inventive concepts involved pushing a message to an App loaded into the mobile unit 105 (as disclosed in the '395 patent).  In response to the push message, a corresponding virtual session, such as a TLS session, can be

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

reactivated between an App and the application server.  Depending on the claimed embodiment, this TLS session reactivation can be done automatically or in response to making a user selection of a graphical user interface object that is made available to the user by the mobile unit 105 in response to the received push message.

35.    The Inventors contemplated that the pushed information could include application content or could instead include an address or reference to server-side content.  This provided a way to send a push notification with address related information in it, so that the App receiving the push notification could later request further content to be downloaded from the application server using the address information supplied in the push notification message.

36.    The patents in suit, among other things, also teach the concept of sending a push notification to a corresponding App that could then automatically download further content related to the push notification from the application server, without the need for the address to be specifically embedded into the push notification.  This allows Apps to automatically perform client-server sync operations in response to a push notification message.  In modern day systems, this corresponds, for example, to the Android data message type of push notification message.

37.    The Inventors specifically contemplated embodiments that involve using both the cellular and the WiFi connections at different times to support the same wireless push service.  For example, the initial configuration part can be performed using the cellular air interface.  Later, the actual push can come in over the WiFi air interface.  The mobile unit can roam back and forth between the cellular-data and WiFi air interfaces at will and the push service can still operate.  Automated processing such as background application refresh operations can be performed in response to the push message.

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

38.     The Inventors conceived that it would be advantageous to send a push message having an application identifying field, so that the user's handset could determine to which one of a plurality of installed applications the push message should be directed.

39.     As disclosed in the '395 patent, for example at Figures 3-5b and the related written descriptions, among other places, the push message can optionally cause a user-selectable user interface object to be made available to the user.  Upon user selection, the further content can be downloaded either from address-related information supplied in the push message or by triggering a client-server sync type operation.  The data content of the push message can be used to automatically determine what actions to take at the mobile unit 105.

40.     While developing their invention, the Inventors contemplated that user interest information would also be advantageously used with mobile wireless push services.  For example, an application server can receive from some unspecified source information about the user's interests.  In some embodiments the user can identify the categories of interest directly through the client-side application to the server-side application.  In this example or others, the wireless push notification can then be sent to the corresponding user's mobile unit conditioned on the user's interests, as indicated by data structures maintained at the application server or coupled to the application server.

41.     The Inventors also developed methods for geo-location sensitive push notifications.  The Inventors conceived that the GPS function could be built into the handset, and also that the handset could have a local broadcast domain connection, such as to a WiFi access point.  Depending on the embodiment, the user's mobile unit's location can be ascertained from the GPS information sent from the mobile unit, or it can be ascertained from stored information that correlates the WiFi access point to a geo-location where the WiFi access point is physically located.  For example, a given restaurant or store location can be

8

recognized by a user device connecting through that location's public WiFi channel.  Efficient location-based wireless push services can use user-interest information plus the current location of the mobile unit to decide what kinds of push content the user would most likely be interested receiving at a particular moment.  This provides geographical web browser-like functionality using push services and different types of Apps.

42.    The Inventors also contemplated that certain applications might use a wireless client-server communications link to perform geographical web browser type operations.  In this case the client informs the server of, for example, a user interest.  The user interest can then act like a search request.  As the mobile unit moves around, its GPS coordinates are periodically uploaded, or the physical locations of the access point to which the mobile unit is connected can be ascertained.  If the mobile unit comes within the geographical vicinity of a point of presence that meets the user interest request, the wireless client-server session can be resumed from an inactive state to an active state and the server response can be sent to the mobile unit over this wireless client-server connection, which may be a virtual session that is resumed from an inactive state to an active state.

43.    For example, if a user sets his or her interest to hotels and drives around, graphical user interface would automatically update and show the nearby hotels.  This embodiment that can be used in certain location-based type client-server Apps.

**B.    Exemplary Improvements Recited in Specific Claims**

44.    The inventions of the patents in suit resolve technical problems related to client-server computing architecture.  The claims of the patents in suit do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the patents in suit recite one or more inventive concepts that are rooted in computerized client-server computing communication technology and

overcome problems specifically arising in the realm of computerized client-server computing architecture technologies.

45.    The claims of the patents in suit recite an invention that is not merely the routine or conventional use of computers.  Instead, the invention makes use of specific client-server computer architecture functionalities.  The claims of the patents in suit thus specify how computing devices and remote servers are manipulated to yield a desired result.

46.    Specific claims in the different patents in suit recite different specific client-server functionalities.  For example, the asserted '844 patent claims recite inventions that send a push message to an App on a remote unit that uses an application-program-identifying field to identify the target App.  The push message carries address information from which the App can download further information over a resumed virtual session between the App and its respective server.  In other of the '844 claims, different specific mobile-wireless network configurations are recited and specific client-server functionalities are recited where the client sends a request to a server, the server then sends a response that indicates the availability of new data for the App at the server, in response to this notification, the App then sends another request to pull the content from the server, and the server thus responds to the request and allows the client side App to synchronize with the server.  All asserted claims of all asserted patents contain different recitations of specific wireless network configurations and different specific client-server functionalities needed to achieve the specific technological result of each asserted claim.

47.    In the paragraphs below, the asserted patent claims will be described in some level of detail and specific information will be provided to explain why these claimed inventions correspond to novel and non-obvious improvements to computer functionality, specifically in the technological area of client-server mobile computing systems.  This technological area is understood to mean

10
DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

smartphones, tablets, laptops with WiFi, and the different server-side application servers with which they interact.  In many cases there will be a smartphone or a tablet that has a number of different application programs (Apps) installed, and each installed App will be in communication with a respective application server that services the respective particular installed App on the mobile unite such as a smartphone or tablet.

48.    In the discussions below, it should be noted that the features began to emerge well before the time of the expiration of the patents in the late 2018 time frame and beyond.  The bulk of the features described in the paragraphs below began to become into common use by 2014.   For example, push technologies provided by Mozilla Firefox came out in 2013, with improved push notifications updated by December of 2013.  These technologies are what have evolved into modern Android push technologies.  Hence it is to be understood that the push technologies and other technologies used in Android were largely available by 2014 or 2015 at the latest.

49.    The paragraphs below each discuss a particular corresponding asserted patent claim.  The claims come from different patents and have different claim numbers.  The paragraphs below are ordered in accordance with the subject matter of the claims, not in accordance with claim number or patent number.  The logic behind the ordering will become clear upon reading the paragraphs in sequence.

50.    Claim 1 of the '844 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 1 of the '844 patent recites that "the particular mobile unit is configured to execute a plurality of application programs and to wirelessly receive an incoming communication from a particular one of the network servers of the one or more network servers, read an application-program identifying field contained within the incoming communication to identify a particular application program resident on the

11

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

particular mobile unit to which at least a portion of the incoming communication is to be directed."   The '844 Claim 1 also recites: "causing the incoming communication to be wirelessly transmitted to the particular mobile unit, wherein the incoming communication includes the application program identifying field that identifies the particular application program and contains an address indicating from where further content is available to be downloaded."  The '844 Claim 1 also recites:  "wherein the incoming communication acts as a notification to allow the particular mobile unit to download the further content by transmitting the client-request packet and receiving the further content located at the address contained in the incoming communication."    Other aspects of the claim language relate to a virtual communication session that is used as opposed to a standard client-server communication session.   Taken as a whole, Claim 1 of the '844 patent provides an improved computer functionality that allows mobile internet client server systems to operate more efficiently, and to be more practical and useful.  This enables improved and more efficient push protocols for systems where the mobile unit houses multiple different Apps.  A specific push message ("incoming communication") is sent to a specific application that resides on the particular mobile unit.  An application program identifying field is included in the push message to enable this functionality.  The push message also contains an address that enables the target application to download further information that is ready for the application to download from the server.  This type of functionality was novel and non-obvious at the time the invention was made in 1998, but by 2014, these inventive concepts have been widely adopted for use in modern push based mobile client-server communication systems involving push notifications being sent from servers to Apps installed in the mobile unit.

     51.    Claim 4 of the '395 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 4 of the '395 patent recites that: "the particular mobile unit is configured to wirelessly receive pushed

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

information, read an application-program identifying field contained within the pushed information to identify a particular application program resident on the particular mobile unit, and to present to the user via the graphical user interface a selectable indication, such that when the selectable indication is selected by a user selection, further content related to the particular application program will be downloaded to the particular mobile unit."  Claim 4 of the '395 patent also recites the server: "causing a communication push message to be wirelessly transmitted to the particular mobile unit, wherein the communication push message includes the application-program identifying field that identifies the particular application program and contains information related to the further content available for downloading in response to the user selection;" "receiving a client-request packet wirelessly coupled from the particular mobile unit in response to the user selection, the client-request packet indicating a request to download the further content;" "wherein the communication push message acts as a notification to allow the user to selectively download the further content only if the user is interested in receiving the further content."  Other aspects of Claim 4 of the '395 patent explain that the push message is not sent as an immediate response to a client-request packet, and that the server sends the requested information.  The claim language of Claim 4 of the '395 patent provides a specific improvement in computer operation and functionality in client-server mobile communication systems.  The push message has the application-program identifying field to identify a specific target application on the particular mobile unit.  The push message also contains information related to further information available on the server ready to be downloaded into the specific target application program.  The claimed invention of Claim 4 of the '395 patent also allows to the further information to be downloaded in response to a user selection.  This type of push-assisted client-server system functionality was novel and has been adopted in modern push based mobile systems.  It represents a specific advancement in computer functionality that has

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

made push based mobile client-server communications ubiquitous and popular in today's modern systems. In modern Android systems, this user-selection functionality is partially implemented using the ubiquitous "notifications panel." When the push comes into the App, the push becomes visible in the notifications panel.  If the user is interested in interacting with the pushed content, the user can select the push notification message in the notification panel and cause the App to be opened in such a way that the downloaded information becomes accessible. This inventive concept represented an important advancement in modern mobile handheld systems that was not a known computer functionality or computer operation until after the invention was made in late 1998.

52.     Claim 5 of the '811 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 5 of the '811 patent recites that: "the particular mobile unit is configured to wirelessly receive an incoming communication from a remote application server of the one or more network servers, read an application-program identifying field contained within the incoming communication to identify a particular application program resident on the particular mobile unit, and to present to the user via the graphical user interface a selectable indication, such that when the selectable indication is selected by a user selection, further content related to the particular application program will be downloaded to the particular mobile unit."  Claim 5 of the '811 patent also recites the server: "causing the incoming communication to be wirelessly transmitted to the particular mobile unit, wherein the incoming communication includes the application-program identifying field that identifies the particular application program and contains information related to the further content available for downloading in response to the user selection," "the incoming communication is coupled at least partially via a virtual communication session implemented at one or more layers below the application layer" "receiving a client-request packet wirelessly coupled from the particular mobile unit in response to the user selection,

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

the client-request packet indicating a request to download the further content;" "wherein the incoming communication acts as a notification to allow the user to selectively download the further content only if the user is interested in receiving the further content."  The claim language of Claim 5 of the '811 patent provides a specific improvement in computer functionality in client-server mobile communication systems.  The push message has the application-program identifying field to identify a specific target application on the particular mobile unit.  The push message also contains information related to further information available on the server ready to be downloaded into the specific target application program.  This particular version of the claimed invention also allows to the further information to be downloaded in response to a user selection.  Also, Claim 5 of the '811 patent more specifically defines the virtual session used to support this type of push-assisted mobile client-server communications.  In modern day Android based servers and mobile handsets, transport layer security (TLS) is built into the communication protocol to make such transactions secure and practical for mobile use.  This overall claimed type of push-assisted client-server system functionality was novel at the time of the invention and has since been adopted for use in many modern push based mobile systems.  The ability to send a push addressed directly to the App, over a virtual session (like TLS), and to identify further content to be downloaded upon user selection is now a basic part of mobile operating systems like Android.  This ability is used by applications companies that provide server side applications and client side Apps.  This represents a specific advancement in computer functionality that has made push based mobile client-server communications ubiquitous and popular in today's modern systems.  Without the recited functionality, many modern push-based applications would not be able to function.  In modern Android systems, this user-selection functionality is partially implemented using the ubiquitous "notifications panel."

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

53. Claim 25 of the '844 patent recites a server-side method for use with a server that communicates with a particular mobile unit. Claim 25 of the '844 patent recites: "A method for use in a system comprising a wireless handheld device that includes first and second transceivers configured to be selectively wirelessly coupled to a first wireless packet network access station provided by a base station of a cellular communications network and a second wireless packet network access station that uses a low-power wireless local area network air interface whose coverage area is substantially smaller than a coverage area provided by the first wireless packet network access station." Note that this architecture of the wireless handheld that has both a cellular air interface and a wireless local area network air interface (e.g., WiFi) is now in ubiquitous use. As specifically recited in Claim 25 of the '844 patent, at the time of the invention, in 1998, it was not yet known to have mobile application programs installed on the handset that performed synchronization operations with a remote server-side application program while the wireless handheld device moved around and switched back and forth between both air interfaces in a seamless manner. Claim 25 of the '844 patent also recites: "a method comprising:" "the remote server system receiving a first request coupled thereto from the wireless handheld device via the first wireless packet network access station;" "the remote server system transmitting a server response to the wireless handheld device, the server response including an indication of availability of content related to the first request;" "the remote server system receiving a second request coupled thereto from the wireless handheld device, wherein the second request is automatically generated by the wireless handheld device in response to the server response, without requiring user action, and the second request is coupled via the second wireless packet network access station; and" "the remote server coupling the available content related to the first request to the wireless handheld device, via the second wireless packet access station." This method has become ubiquitous and has led to well-known improved

computer operation and functionality known as "application-auto-synchronization," and "background application refresh."  In Android based systems, this functionality is implemented using "Android data messages."  This method provides a mechanism of enhanced computer functionality that is the basis for enhanced and efficient protocols that are now in common use but were not known at the time of the invention, in 1998.  The main novel inventive idea can be summarized as having the application on the wireless handheld unit send information to the remote server system that causes a data channel (e.g., a push data channel) to be configured related to a "first request" that corresponds to a specific type of information application channel.  Once this logical channel is established, when the server has new information for the specific application program in the wireless handheld unit, the server sends a server response message (e.g., a push message in Android data message format) to the wireless handheld unit.   In response to this push-data message, the wireless handheld unit automatically sends a second request (response message to the push-data message). No user action is needed for the second request message to be sent from the wireless handheld unit in response to the push-data message.  Once this automatically generated second request message is received at the server, the server sends the new available content to the application program operating on the wireless handset.  This claim language represents a very specific improvement in computer functionality that is the basis for application-synchronization," and "background application refresh."  This method also sets up the basic construct for "Android data messages."  This method is the basis for improved, more efficient mobile communications network protocols that are used billions of times per day all over the world.  In claim 25 of the '844 patent, the first request is coupled over the cellular network while the second request is coupled over the WiFi network. Hence Claim 25 of the '844 patent additionally recites an additional novel inventive concept whereby a single application program that resides on a single

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

wireless handheld unit seamlessly roams between the cellular and WiFi networks while implementing the above-mentioned novel and improved computer functionality.  These inventive concepts are now in modern common practice.  Yet at the time of the invention, back in late 1998, seamless roaming between cellular and WiFi networks while executing background application refresh and client-server application data synchronization type operations using the recited efficient protocol was completely novel and not yet in practice.

54.     Claim 32 of the '844 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 32 of the '844 is similar to Claim 25 of the '844 patent, but does not specifically recite the concept of seamless roaming between the cellular network and the WiFi type network.  Either or both types of networks can be used to satisfy Claim 32.  Claim 32 of the '844 patent recites: "the method comprising:" "the particular server receiving a first request coupled thereto from the particular mobile unit via the particular wireless packet network access station and via the packet switched data network;" "the particular server coupling a server response to the particular mobile unit, the server response including an indication of availability of content related to the first request;" "the particular server receiving a second request coupled thereto from the particular mobile unit, wherein the second request is automatically generated by the particular mobile unit in response to the server response, without requiring user action; and" "the particular server coupling the available content related to the first request to the particular mobile unit."  The main novel inventive idea can be summarized as having the application on the particular mobile unit send information to the particular server system that causes a push data channel to be configured related to a "first request" that corresponds to a specific type of information application channel.  Once this logical channel is established, when the particular server has new information for the specific application program in the particular mobile unit, the particular server sends a server response message (push

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

message in Android data message format) to the particular mobile unit.   In response to this push-data message, the particular mobile unit automatically sends a second request (response message to the data message).   No user action is needed for the second request message to be sent from the particular mobile unit in response to the push-data message.  Once this automatically generated second request message is received at the server, the server sends the new available content to the application program operating on the particular mobile unit.  This claim language represents a very specific improvement in computer functionality that is the basis for application-synchronization," and "background application refresh."  This method also sets up the basic construct for "Android data messages."  This method is the basis for improved mobile communications network protocols that are used billions of times per day all over the world.  Yet at the time of the invention, back in late 1998, mobile units executing background application refresh and client-server application data synchronization type operations using the recited efficient protocol was completely novel and not yet in practice.

55.   Claim 37 of the '844 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 37 of the '844 is similar to Claim 32 of the '844 patent, but specifically recites the use of a virtual session server in addition to the particular network server.  The virtual session server acts to provide transport layer security (TLS) functions that operate between the mobile unit and the particular network server.  In modern day systems, the inclusion of a TLS layer server function between the application residing in the mobile unit and application operating on the particular network server is now an important required function for all client and server applications that operate within the Android operating system environment.  Claim 37 of the '844 patent recites: "the method comprising:"  "establishing a communication session between the mobile unit and the virtual session server via the particular wireless packet access

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

station, using the at least one wireless air interface;" "the particular network server receiving a first request coupled thereto from the mobile unit at least partially via the communication session;" "the particular network server coupling a server response to the mobile unit, the server response including an indication of availability of content related to the first request;" "the particular network server receiving a second request coupled thereto from the mobile unit, wherein the second request is automatically generated by the mobile unit in response to the server response, without requiring user action; and" "the particular network server coupling the available content related to the first request to the mobile unit;" (…) "wherein the first request is received by the virtual session server and forwarded to the particular network server during a first active state of the communication session, and the second request is received by the particular network server during a second active state of the communication session which follows an inactive state of the communication session."  As can be seen, Claim 37 recites all the novel and improved computer functionality features as discussed above in respect to Claim 32, but also recites specific use of virtual sessions, as are now well recognized to be important additional security and fast-session-restart efficiency functions to be used with the functions of application-synchronization," "Android data messages," and "background application refresh."  Hence Claim 37 of the '844 patent specifically recites the same improved computerized functionality as discussed in the paragraph above in connection with Claim 32 of the '844 patent.  Additionally, Claim 37 of the '844 patent recites a more efficient and secure computer software functionality by inserting a virtual sessions layer below the application layer.  That this is an important, efficient and more secure computer functionality is evidenced by the fact that it is now required practice that the Android data-push messages and all other types of Android client-server messages need to be sent on a secure virtual session known as transport layer security (TLS).

20

56.     Claim 46 of the '844 patent recites a client-side method for use with a mobile unit that communicates with a particular server.  Claim 46 of the '844 patent recites: "the method comprising:" "receiving from the user of the particular mobile unit an indication of a type of information of interest to the user;" "the particular mobile unit receiving from the particular server a server response that includes an indication of availability of information corresponding to the type of information of interest to the user;" "and the particular mobile unit sending to the particuiar (sic) server a request, wherein the second request is automatically generated by the particular mobile unit, without requiring user action; and" "the particular mobile unit receiving from the particular server the information corresponding to the type of information of interest to the user."   The claim language of Claim 46 of the '844 patent provides a new mobile-computer functionality that allows a mobile unit to keep a user up to date with information that becomes available on a server.  The mobile device receives from the user information indicative of one or more user interests.  From time to time, the server will acquire new information that is of interest to the user.  When such information becomes available, the mobile unit receives a notification message such as an Android data message telling the mobile unit that such information has become available at the server.  When the mobile unit receives the data message notification for information that corresponds to the user interest, the mobile unit then sends an automated request to have the information of interest downloaded to the mobile unit without the need for user interaction.  This functionality can be described as client-server synchronization, or background application refresh, implemented using "Android data messages" that are sent in accordance with the availability of new information of interest to the user.  This claim describes specific novel and non-obvious computer functionality that has been widely adopted and in common use all over the globe in modern mobile handsets and application servers.  The user indicates a user interest, and the application in the

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

client-side mobile handset is kept up to date and synchronized with the corresponding information as it becomes available or otherwise updated in the server.  This makes for more efficient air interface usage (no need to download unwanted content over the air) and also makes the user interface more efficient as well (streamlined to the user interest and less cluttered inbox type interface).   All of the discussion of novel and improved computer functionality as discussed in the paragraph above in connection with Claim 32 of the '844 patent also applies here directly to Claim 46 of the '844 patent.

57.   Claim 22 of the '395 patent recites a server-side method for use with a server that communicates with a particular mobile unit.   Claim 22 of the '395 patent recites that: "the particular mobile unit is configured to wirelessly receive pushed information, and to present to the user via the graphical user interface a selectable indication, such that when the selectable indication is selected by a user selection, a further content available for downloading will be downloaded to the particular mobile unit."  In Claim 22 of the '395 patent, the server performs the following functions: "causing a communication push message to be wirelessly transmitted to the particular mobile unit, wherein the communication push message contains information related to the further content in response to the user selection, wherein the information related to the further content relates to the information item that comports with the user interest indication," "receiving a client-request packet wirelessly coupled from the particular mobile unit in response to the user selection, the request packet indicating a request to download the further content;" "wherein the communication push message acts as a notification to allow the user to selectively download the further content only if the user is interested in receiving the further content."  Other aspects of the Claim 22 of the '395 patent explain that the push message is not sent as an immediate response to a client-request packet, and that the server sends the requested information.  The claim language of Claim 22 of the '395 patent provides a specific improvement in

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

computer functionality in client-server mobile communication systems.  The push message contains information related to the further content that specifically comports with a predefined user interest indication.  This allows the flow of pushed content to be controlled to only relate to content already identified to be of subject matter that is of interest to the user.  The further information available on the server ready to be downloaded thus has been pre-filtered based on user interest information.  This particular version of the claimed invention also allows to the further information to be downloaded in response to a user selection.  This type of push-assisted client-server system functionality was novel and has been adopted in modern push based mobile systems.  This can be where a user identifies categories of interest, or where the network keeps track of user actions and learns the interests of the user.  This innovation represents a specific advancement in computer functionality that enables push based mobile client-server communications systems to only send filtered pushes to the user. Without the recited functionality, many modern push-based applications would not be able to function as efficiently as they do today.  In modern Android systems, this user-selection functionality is partially implemented using the ubiquitous "notifications panel."  The ability to limit certain push messages according to user interest allows the notification panel to not be overloaded with irrelevant push information.  The notifications panel allows the user to only select the pushed content that is currently still of interest to the user.  This is very important to allow push based mobile client-server systems to be practical and streamlined to the user interest and to the user's current activities and interests at the time the push message was received and all the way to well after the message was received.

58.    Claim 1 of the '811 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 1 of the '811 patent recites a method comprising: "receiving a user interest indication associated with the particular user, wherein the user interest indication identifies one or more user

23

preferences used to identify information that comports with the user interest indication;" "receiving via the packet switched data network a location indication, wherein the location indication identifies at least an approximate geographical location of the particular mobile unit;" "causing information relating to the information item to be coupled from a network server (…) without the need to continuously maintain an active user-interactive client-server application layer session between the network server and the particular mobile unit between a first time when the user interest indication is received to a second time when the particular mobile unit receives the one or more data packets;" "wherein the one or more data packets are coupled at least partially via a virtual communication session implemented at one or more layers below the application layer;" "wherein the virtual communication session is configured to be transitioned from an initial active state to an inactive state, and later to be transitioned from the inactive state back to the active state, (…)"  This claim language specifically recites novel and non-obvious computer functionality that enables improved better mobile client-server mobile applications processing and protocols.  In such a system, unlike desktop based searching and web browsing, the mobile unit can identify a user interest, and the by moving around, can keep the server informed of the mobile unit's current location.  To make this work efficiently for use with many mobile different users and many different application servers sharing the cellular or other type of air interface all at once, virtual sessions are used.   That is, a session is established and is used to upload the user interest.   The virtual session can be intermittently reactivated to allow geo-location updates to be sent as well.   The virtual session can also be reactivated to allow the geographical web browsing search results to be pushed or otherwise downloaded when the server finds results of interest to the user in the user's current local geo-location.  This type of geographical web browsing functionality was novel and unobvious at the time, but has since become a common practice.

24

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

59.     Claim 1 of the '395 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 1 of the '395 patent recites a method comprising:  "receiving a user interest indication associated with the particular user, wherein the user interest indication identifies one or more user preferences used to identify information that comports with the user interest indication;" "receiving via the packet switched data network a location indication, wherein the location indication identifies at least an approximate geographical location of the particular mobile unit;" "identifying an information item that comports with the user interest indication and is associated with the location identified in the location indication; and"  "causing information relating to the information item to be coupled via the packet switched data network to the particular wireless packet access station so that the particular wireless packet access station can wirelessly transmit the information relating to the information item via one or more unsolicited pushed messages using one or more packet headers addressed to the particular mobile unit"  "without the need to continuously maintain an active user-interactive client-server application layer session (…)."  All of the discussion of novel and improved computer functionality as discussed in the paragraph above in connection with Claim 1 of the '811 patent also applies here directly to Claim 1 of the '395 patent.  Additionally, in Claim 1 of the '395 patent, the information relating to the information item is specifically recited to be sent one or more unsolicited pushed messages using one or more packet headers addressed to the particular mobile unit.  This particular embodiment of the invention specifically introduced the efficient functionality whereby unsolicited pushed messages using one or more packet headers addressed to the particular mobile unit could be used as the mechanism to send the actual geographical web browsing search results to the mobile unit.  This is a very efficient way to use the push channel to send intermittent data on wireless channels to reduce the need to maintain and reactivate traditional client-server connections which take up undue

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

air time when multiplied by the many different users all sharing the air interface at the same time.  As such, the method of Claim 1 of the '395 has found use in many fielded client-server mobile application systems since the time the invention was made in late 1998.

60.    Claim 90 of the '139 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 90 of the '139 patent has similar features to Claim 1 of the '395 patent as discussed in the paragraph above.  Hence all of the discussion of novel and improved computer functionality as discussed in the paragraph above in connection with Claim 1 of the '395 patent also applies here directly to Claim 90 of the '139 patent.  Also, because all of the discussion of novel and improved computer functionality discussed two paragraphs connection with Claim 1 of the '811 patent also applies directly to Claim 1 of the '395 patent, that discussion also applies directly here to Claim 90 of the '139 patent.  The key difference between Claim 90 of the '139 patent and Claim 1 of the '395 patent lies in the first recited method action.   Claim 90 of the '139 patent recites: "receiving a user interest indication associated with the particular user, wherein the user interest indication identifies one or more user preferences used to identify advertisements of potential personal interest to the particular user;"  The identifying and causing actions of Claim 90 are also different in how they start: "identifying a particular advertisement that comports (…)" and "causing information relating to the particular advertisement to be coupled (…)."  Hence the main difference is that while Claim 1 of the '395 patent deals with a user interest relating to a user preference used to identify an information item, Claim 90 of the '139 patent deals with a user interest relating to a user preference used to identify advertisements of potential personal interest to the particular user.  Essentially the information item of interest of Claim 1 of the '395 patent is substituted for advertisements of interest in Claim 90 of the '139 patent.  Hence all statements regarding the novelty and the expanded and improved computer

26

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

functionality as described above in connection with Claim 1 of the '395 and Claim 1 of the '811 patent apply equally to Claim 90 of the '139 patent.

61.     Claim 22 of the '139 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  Claim 22 of the '139 patent recites a method comprising: "receiving a user interest indication associated with the particular user, wherein the user interest indication identifies one or more user preferences used to determine one or more types of content the user desires to receive via one or more unsolicited pushed messages at the particular mobile unit;" "receiving via the packet switched data network a location indication that was wirelessly coupled by the particular mobile unit to the particular local broadcast domain entity;" "causing a search to be performed over a plurality of sets of content to identify, if present, a resulting content that is categorized according to the user interest indication and is associated with a point of presence located in a vicinity of the location identified in the location identification indication; and" "causing information relating to the resulting content to be coupled via the packet switched data network to the particular broadcast domain entity so that the particular broadcast domain entity can wirelessly transmit the one or more unsolicited pushed messages using packet headers addressed to the particular mobile unit to automatically notify the particular mobile unit about the resulting content without the need to continuously maintain an active client-server session between a network server of the one or more network servers and the particular mobile unit between a first time when the user interest indication is received and a second time when the particular mobile unit receives the one or more unsolicited pushed messages."  All of the discussion of the novel and non-obvious computer functionality discussed two paragraphs above in connection with Claim 1 of the '395 patent also apply to Claim 22 of the '139 patent.  Claim 22 of the '139 patent additionally recites even further novel computer functionality in that the location information is derived via a local broadcast domain entity, for example a WiFi

27

hotspot or similar wireless local area network access point as are now in common use in modern mobile systems.  In Claim 22 of the '139 patent, the content searched for specifically corresponds to a point of presence that comports with the user interest and is located in a vicinity of the mobile unit's current location.   This is a novel mobile computing functionality that takes advantage a network of local broadcast domain entities such as WiFi hotspots and allows this lower cost connection to be used to perform location based services that allow a mobile unit to find a nearby point of presence of a specific type of interest to the user.

62.    Claim 43 of the '139 patent recites a server-side method for use with a server that communicates with a particular mobile unit.  The claim language of Claim 43 of the '139 is almost identical to the claim language of Claim 22 of the '139 patent, except the local broadcast domain is substituted with a cellular base station.   In Claim 43, the location could either come from the cellular base station or from GPS type information coupled via the cellular base station from the mobile unit.   Hence everything that was said above with respect to Claim 22 of the '139 patent and  Claim 1 of the '395 patent regarding specifically recited novel and non-obvious computer functionality equally apply to Claim 43 of the '139 patent.  The only difference being that the location information is transmitted via a cellular base station.

63.    The technology claimed in the patents in suit does not preempt all ways of using client-server computing architectures or the use of all communication session technologies, or any other well-known or prior art technology.

### C.    Advantage Over the Prior Art

64.    At the time the Inventors were developing and patenting their inventions, wireless Internet-enabled devices and services were in their infancy.  Internet access to wireless devices was not in mainstream use.  Basic wireless

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

browser and push functions were available in some of the earliest Internet-enabled handhelds, but nothing near what is in common use today.

65.     Today's wireless devices often include a large plurality of Apps, and each separate App has its own push notification channel, and the push messages can be sent over both the cellular data and the WiFi channels.  At relevant times, wireless Apps were not available to provide effective user-interest and geographical web browsing functions.  Push services were not yet available that allowed similar functionality as the geographical web browser.  The concept of separate Apps with dedicated push channels to each App as regulated by a packet filter and an application-specific-ID field in the push packet header was not yet available.

66.     The patented inventions disclosed in the '139 patent, the '395 patent, the '811 patent, and the '844 patent provide many advantages over the prior art, and in particular improve the operations of communications between client-side wireless mobile units and remote servers.

67.     Many specific novel and non-obvious advantages of the asserted claims over the prior art are described above in section IV. B., specifically in the paragraphs that deal with the detailed discussion of exemplary asserted claims and their advantages that they provided to computer functionality over and above the prior art at the time that the invention was made.  The paragraphs below provide additional details, insights, and alternative views regarding the novelty of the overall portfolio and the asserted claims.

68.     For example, the patented invention provides systems and methods to enable a mobile using to maintain a first network connection with a central server and to control information flow on this connection using information received on an auxiliary channel.

69.     Another advantage of the patented inventions is providing systems and methods to enable separate Apps in the user mobile unit to stay separately

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

connected to their respective corresponding application server via a separate push channel for that App.  Each separate push channel can be implemented in such a way that there is no need to continuously remain connected because each such channel can preferably maintain security parameters and also be deactivated and reactivated with an abbreviated security handshake procedure.

70.   Certain embodiments of the patented invention also contemplated that the push operations would often occur over a low-power local area network channel like a local WiFi channel.  While such functionality is common today, the earliest mobile units in their infancy at the time with web browser functionality only used cellular channels like SMS and wireless HTTP.  The prior art did not contemplate push services that would allow wireless Internet data-channel roaming between a data access channel provided by the cellular service operator network and a data access channel provided by a wireless access point such as a WiFi access point.

71.   The present invention contemplates that some of the inventive methods can be used with user wireless mobile devices that provide both cellular data connectivity and WiFi data connectivity and roam between the two access types.  For example, the wireless mobile unit can configure the push notification service for a given App using a first wireless interface, such as cellular Internet channel, and later respond to a push message for that App that came in over a second wireless interface, such as a WiFi channel.  In a claimed embodiment, in response to the push, the App will perform automated background application refresh type operations.

72.   Certain embodiments of the present invention provide specific location-based types of push services that were not available in the prior art.  For example, a user interest indication can be provided to the server-side application from either the mobile unit of a third party or can otherwise be inferred by the server based on user actions.  In such cases, the mobile unit's GPS coordinates or

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

the mobile unit's data access connection point can be ascertained and converted to a geographical location associated with the data access point to which the mobile unit is presently connected.  The server-side application can thus keep track of the mobile unit's present location.  Push events can be triggered when the mobile unit becomes in a local area where a point of presence is available related to the user interest.  At such time the push notification is sent to the mobile unit.

73.    As such, another advantage of the patented inventions is that a user may now "surf the web" or navigate mobile applications based on geographic information such as GPS information.

74.    An additional advantage of the patented inventions includes technology to provide local broadcast information to automatically control a network application using a packet filter.

75.    Yet another advantage of the patented inventions includes the ability to provide a user with a means to receive information from a first connection, such as a wireless network connection, based on the user's position.

76.    Another advantage of the patented inventions is that it allows an application, like a web browser or another mobile app, to control the flow of information a device may received based on a location based data, such as GPS data.

77.    An additional advantage of the patented inventions include a mobile unit that can receive at least one transmission from a second wireless network or interface and then generate a request from the first wireless network connection in order to control navigation of an application, such as a mobile app.

78.    Another advantage of the patented inventions is that a server located on a network may receive these requests generated based on the above described transmissions.

79.    Yet another advantage of the patented invention is that a mobile unit allows for the use of filters, or preferences, that may be applied to the automated

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT

control, allowing certain information to be selectively accepted or rejected, thereby controlling the information received by a mobile unit.

80.    Because of these significant advantages that can be achieved through the use of the patented invention, the '139 patent, the '395 patent, the '811 patent, and the '844 patent present significant commercial value for companies like Gucci. Indeed, while such technology did not exist prior to the invention, since the issuance of the patents in suit, many technologies related to location-based types of push services have emerged, utilizing features claimed in the '139 patent, the '395 patent, the '811 patent, and the '844 patent.

\*\*\*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in Escazu, Costa Rica on August 23, 2022.

Respectfully submitted,

Eric Dowling

DECLARATION OF ERIC MORGAN DOWLING IN SUPPORT OF COMPLAINT